Good morning, Your Honors. A.J. Cutchins for the appellant, Kevin Phelps. May it please the Court. I won't suggest that this is the worst injustice this Court has confronted, but I'm hard put to recall a case in which a litigant has been denied his day in court in a more arbitrary and capricious fashion. Kevin Phelps has been in federal court for more than a decade. He has yet to have a hearing in any court on the merits of his claims of constitutional error. It hasn't been for lack of trying on the appellant's part, but his efforts have been met by a long string of errors and judicial misadventures. First, the district court ruled that his federal petition was barred by the statute of limitations. The district court based this on its interpretation of California's rule regarding the finality of habeas petitions, an interpretation that this Court has decisively rejected. You know, I think we know the history pretty well. OK. Then I'll cut to the chase. According to particularly since you've been given 10 minutes for a decade of attempted litigation. Yes. I wasn't planning on going through all of the ins and outs, but I don't feel absolutely constrained by the 10 minutes because it is a complicated problem. But try to keep it as close to 10 minutes as you can. I will, Your Honor. And if I may, I would like to reserve a couple of minutes for rebuttal. Yes. Once we get past all of the misadventures that occurred in this case, we're down to the rule 60B motion, the standard, how it applies here. According to the Supreme Court, Rule 60B-6 was designed to give the Court's wide latitude, quote, to vacate judgments whenever such action is appropriate to accomplish justice, if the movant failed to obtain normal appellant relief because of extraordinary circumstances. I submit that this case presents extraordinary circumstances. And to condemn the appellant to spend the rest of his life in prison without any court ever considering his federal constitutional claims because of a clear error of law. That's just the sort of manifest injustice Rule 60B-6 is meant to remedy. This appellant is an. Justice Scalia. Yes. In his majority opinion, seemed to find that simply because there's an error of law that a court later, Supreme Court Appeals Court later changes the rule that that's not the kind of extraordinary circumstance that warrants the 60B motion. What is it about this case that you think would persuade Justice Scalia and those who joined the majority of that case to classify this as an extraordinary circumstance? Well, I'm not sure about convincing Justice Scalia, but I would hope that I could convince five of his colleagues that. Good luck. One of the. I know this is not an issue before. Okay. Well, you know, in the background. Yes, Your Honor. What is this really essential claim to reversing his conviction or to getting a habeas relief, I should say? Well, Judge Bright, I can't speak really knowledgeably about the underlying claims because I was hired on, you know, I was appointed by this court to argue this procedural problem. He has claims of ineffective assistance of counsel. And when I say that no court ever heard them, the State courts didn't hear them either for bad procedural reasons. That's enough.  Thank you, Your Honor. I think Judge Bright said that this isn't particularly relevant, but I think he's being a little modest about the question. I think in Justice Stevens' dissent, he suggested that that was the kind of thing that the court should take in finding and examining whether it's an extraordinary circumstance, that the court should look at the entire case, including what the basis of the claim is. And that really leads me to a question I had for you in Justice Stevens' dissent. He suggested that this was a matter over which the district court would have considerable discretion and that it should have been asked to really examine holistically, I suppose, the entire matter and then exercise its discretion rather than having an appellate court make that ultimate decision. What do you think about that? Well, I certainly agree with Justice Stevens' dissent. And were I free to just argue that, I certainly would. In terms of its application to this case. The question, Your Honor. Yes, Your Honor. Yes. The question is following. I mean, it's – Justice Stevens was talking about a case that's somewhat different than this. It was – but he said that the process for determining extraordinary circumstances should be that the district court should examine all of the circumstances. I don't have the impression that this district court really has done that thus far. So my question is, if we agree with you that the test is extraordinary circumstances, wouldn't the remedy be a remand to the district court to conduct that inquiry? Your Honor, I believe that in the posture of this case, if you agree that there are extraordinary circumstances, then I believe that the – Well, no, I didn't say if we agree there are extraordinary circumstances. I said if we agree that the issue is whether there are extraordinary circumstances, isn't that a determination that even the dissent said should be made within the discretion of a district judge after he has examined all of the circumstances of the case? Well, I'll point out that the majority there had no problem itself for the very first time in the Supreme Court weighing whether there were extraordinary circumstances. I think it is up to this Court. The district court had, Lord knows, any number of chances to determine that, and its final word was that the appellant has failed to set forth any cognizable ground to warrant reconsideration. In other words, district court didn't think there were extraordinary circumstances. I would like, though, to address the very first question you asked. Why is this case different than Gonzales v. Crosby? I think that is the essential question facing the Court. And I submit that this appellant is entitled to relief for exactly the reasons, exactly the reasons why relief was denied to Mr. Gonzales. Judge Scalia's opinion didn't set any hard and fast rule about in this kind of case, you don't get relief. He said under the circumstances of the case before the Court then, and he pointed to two things that warranted a denial of relief. One was that Mr. Gonzales was not diligent in pursuing all of his remedies. The second was that what Gonzales was claiming was that law which had been well settled, which was very clear, changed after he received an adverse ruling. Both of those things are exactly the opposite in this case. There can be no suggestion that this appellant was anything other than diligent in pursuing his remedies. He went after them by every means at his disposal, including all the petitions for rehearing and the petition for cert that the Court noted Gonzales didn't do. More important, unlike Gonzales, this is not a case where there was a change in settled law. In this case, the district court took the first bite at interpreting California's finality rule, and it got it wrong, as did the first panel to consider the case. Another panel of this Court reached the opposite conclusion at virtually the same time in Washington v. Lindsay, and in yet another case that was roughly simultaneous, the Court went en banc to reverse a panel decision that was based on exactly the same error. So the case you don't rebut in your reply brief, you know, the State relies on a case called DeLay v. Gordon. I'm sorry? State relies on a case called DeLay v. Gordon, which, to quote the brief, says, this circuit has refused to consider Rule 60b motion after a case has become final based upon subsequent intervening case law. In this case, it's a case decided after Gonzales, and you don't reply to that in your reply brief. I think I replied to the ñ that comes out of a whole line of cases going back to Tomlin, and I think that the reply that I had to that and the other cases is that Gonzales teaches that each case must be looked at. Well, except that this is post-Gonzales DeLay. DeLay is a case that was decided after Gonzales, so presumably that's a nice trick of interpretation of Gonzales. And what I would say ñ what I would say about DeLay is that if you read it carefully, the Court said on the circumstances there, there was nothing but a change in settled law. Where there is nothing but a change in settled law, clearly Gonzales teaches and DeLay holds that you can't get Rule 60b, sex relief. I'm saying here that there are more circumstances than that. There is the diligence of the appellant, which was important, Gonzales. And more importantly, the law wasn't settled here. Well, one of the problems, if you're going ñ if a change in the law itself is not an extraordinary circumstance, then you have to have something more. And what you're really saying is he tried and he failed. But it comes back to a situation where I think when you're talking about extraordinary circumstances, you really have to look at the whole record. And that's why I asked you the question I did before, because I know this is a case in which there are a couple of hung jurors. That's right, two hung juries. We're all about it. But unless there's some indication that this man is innocent or that the case was mistried and that he should get an acquittal, it's a tough road for you to hoe. And I'm not sure what the Supreme Court would do if we just granted a relief on the basis of what we have, constitutes such an ordinary circumstance. Well, that question again ties into my question. It's sort of a follow-up to Judge Bright's point, is whether we really are the body. And I know it's difficult to say that somebody who's been trying for 10 years to get to the merits of his case should wait another couple of years while we send it back again. That may not seem like a reasonable way to run a judicial system. And I might agree with you, but we're following law that the Supreme Court has established. And I think Judge Bright is correct that before determining that you should be able to get to the merits, someone's supposed to take a look at the whole picture. And that would include looking at the case. And if it were clearly meritless, you might get a different result than if it had a substantial issue. And that's not – that part isn't before us. Now, maybe I'm wrong, and maybe a court of appeals can determine the – but maybe it can determine that it is capable of making that determination without the full record. And maybe the Supreme Court would say, you know, sure, the court of appeals is just as capable of exercising its discretion as the district court, but I wouldn't want to bet on those things, I think. Well, as I agree, it would appear to be that, one, you need to look at the – at everything connected to the case, and, two, you need to exercise the kind of discretion the Supreme Court generally feels is vested in a district court rather than in a court of appeals. Well, Your Honor, what I would say to that is that you're right, but on the other hand, the court can't put – can't put the cart first. So the court can't – neither the district court nor this court can do a – can do a whole ruling on the merits before determining whether he has – is entitled to a ruling on it. But my point here is that there is enough here. There are – there are colorable constitutional claims. There is an indication, as Judge Bright pointed out, there were two hung juries. This was a close case. There is a real case underlying here if it ever gets the merits. But I would like to get back to exactly what I think is the central point, which is this is not a case in which the law changed. There was no settled law regarding the point on which the district court non-suited him. The district court took the first bite at it. It was wrong, as this court, in a long string of opinions, has held. What is equally important, what makes it truly extraordinary, is that at the same time the court – this court upheld his – his denial, another panel of the court did the opposite thing. And yet another panel of the court went and banked to reverse a court, a district court that had done what the district court did here. The point, Your Honors, is that this court is not a casino. There's nothing ordinary about the court's dispositions being assigned randomly on the basis of chance and dumb luck. And that's what happened here. What occurred in this case were extraordinary circumstances within the meaning of Rule 60b-6. Kennedy, I'm not so sure it's extraordinary that you – your case may be affected by the panel that you draw. It may be dumb luck, but I'm not sure it's extraordinary. Well, I think all of us who have been practicing here for a few decades, including myself and Ms. Haley, are quite used to that point. Yes, it does alter some. But when you have the same two cases submitted at the same time and you get opposite results and there's no effort made, despite petitions for rehearing, to square them, I don't think you can say to the guy who then goes back to prison for the rest of his life without a hearing on his claims, oh, well, that's tough, that's just fortuity. That's arbitrary and capricious, and I believe that is extraordinary. And you have in this case two such rulings that are wrong ultimately on the law. Yes, Your Honor. Not just one. That's right, Your Honor. Followed by a third ruling that, well, there was nothing wrong with my earlier rulings, so get out of here. Okay. Well, it's an interesting case, and we'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Thank you. Good morning. Juliet Haley appearing for the appellee. I wanted to start with the very simple assumption that this entire COA was granted, which is that there has been an inconsistent application. And the simple answer is there has not. Mr. Phelps filed a petition for review of a habeas petition. California law has been clear, written right into the rule, that an order of the California Supreme Court denying a petition for review of a decision of the court of appeal is final fourth wit, period. The case was untimely. He filed his federal petition 15 days, one year and 15 days, after the order of denial. Now, when Mr. Cutchin says that it's extraordinary for two cases to make their way up to this court and have different results, he's being disingenuous because the case Washington that made its way up here was not, did not share the same procedural history. The plaintiff in Washington, the petitioner there, did not file a petition for review. So counsel, didn't you tell, or your office tell the district court at the first time it was there that there was no difference between those two procedures? There's no difference in the, I mean, my office conceded that there's no difference in the sense that there are some differences, actually. I mean, we filed some supplemental briefing on that fact. But the point is, is that where it's different is that the two courses of action differ in name only. But they're not different in name only in the sense that, here's what it is. That's what you told the district court, I said. What you said to the district court, whatever you're saying now, is that they differed in name only. What we said to the district court, which was still our position, which the California Supreme Court has told this court, is that, or made clear in its revisions, is that whether you take a petition for review from a denial of an order of the court of appeal, or whether you file an original habeas petition, the denial of that is final forthwith. What we've taken a position is that whether you bring an original habeas, or whether you file a petition for review, the order denying it is final forthwith. Now, this court in Bunny reached a different conclusion regarding original habeas petitions. It didn't know the answer. It thought there was an ambiguity as to that California procedure. It asked the California Supreme Court, it certified the question, what is your rule? And the California Supreme Court, unfortunately, because it was in the middle of revising its rules, declined that. But it subsequently came out with its revision, and it said forthwith, whether it's an original habeas petition, it's final forthwith, whether it's a petition for review, it's final forthwith. It has always been the state's position that it is final forthwith, regardless of the mechanism that you get there. Now, wait a minute. What if the Supreme Court considers the issue, writes a 25-page opinion, and denies the writ of habeas? Then it's a decision under California habeas. What I'm saying is that not all habeas cases that come up to the Supreme Court, if there's some kind of a decision on the merits, the order is not final for 15 days. Isn't that true? What's true is this, and I'm going to be real clear. What's true is this, is that if you file an original habeas petition in the California Supreme Court, they will not issue an opinion, they cannot under their rules, until they issue an order to show cause. That's what people versus devolve, that's the California law. So they will issue an order to show cause to the people. The people will respond, file an answer, then they are required to issue an opinion. And that is a decision that does not become final forthwith. It reminds me of a story. I was on a case one time, and my colleague, Judge Ross, said to an argument, something like, what you're making out of it was more than criminal. And he said, that's just a technicality. And I responded, life is full of technicalities. So what you're saying, essentially, is there's an important technicality between the cases heard on the merits and the cases, whether they're on a habeas or petition for review, are just denied summarily. Absolutely. Even though it says it's, even though you could construe the denial as one on the merits, even though they didn't address it. Right. And that's true. And you talk to any California practitioner, and they know that. They know that when you get a summary denial, that the year starts. And the fact that this court. You know, you talk to any, you say you talk to any practitioner, and you talk to a Federal practitioner, and you talk to Federal courts, you get a little different answer. Well, I think what happened, what we know from this court's jurisprudence on Bunny, is that it said, you know, it didn't address this question of a petition for review, because the rule states it pretty darn clearly, that an order of the California Supreme Court denying a petition for review is final upon filing. So it didn't address that question for the procedural history in Phelps's case. It addressed this question of what do you make of an original habeas petition. Is that a decision, or is that an order? I understand your argument, but I'll tell you something. If this man really has a case, and that's something we don't know, and is going to spend the rest of his life in prison, I think that the appellant's position is pretty appealing to a judge like myself. And I've been through a lot in 40 years. Well, I think that if this man's case is compelling because he has claims which nobody's, you know, he's never asserted an actual innocence claim. You know, he's never, nobody's looked at it. He didn't meet the statute of limitations. That happens all the time, as this Court's well aware. He blew the statute of limitations. The district court looked at it, determined that, you know, followed the law, looked at it, a panel of this Court reviewed the decision on the merits, looked at California's rule about petitions for review, issued a ruling, affirmed the district court's denial, issued the mandate. Then he went back. He got another shot at it saying, talking about Bunny, which we took a position, this is not Bunny, it's not the same procedure. And he said in any event, you know, I mean, and the district court looked at it. I mean, this guy's had so much process. That's what's extraordinary. That's the problem with our courts these days. You get a lot of process, but you never get to the merits. Well. Nobody wants process. People who come to court because their rights have been stripped from them don't say, I'm here to get a lot of process. They say, I would like to have my case heard on the merits. And they've been trying for 10 years. And the state keeps saying, in brief, in its argument, that there's no difference between the two procedures. And then you lose on one of the procedures and you say, oh, sure, there's a difference. But it's always been the case that if it's a decision, then you have to 15 days. Right. And there was no decision. There's no decision here. And I think it's, I mean, I. You can have a decision in one line if it's one of the two types. The honest answer to this is that the state's position is that these orders are final, forthwith. The fact that this court, for a period of time, erroneously interpreted California procedural history gave some defendants an unwarranted windfall. You mean to have their case heard on the merits. When they shouldn't have because it was untimely. And it happened for a brief period. That unwarranted windfall isn't such a terrible thing. I'm just saying that that's what it is. And now if you were, no matter which procedure you brought it by, this court would recognize, as California Supreme Court has told everyone, that it's always been immediately final. It was then. It is now. And so if today Mr. Phelps brought his claim 15 days late, there'd be no question from this court that he was untimely. And it's our position that his petition was denied, you know, nearly eight years ago by the district court. It was affirmed by this court. And it should have been, that should have been the end of it. I was denied at a time when he was brilliant enough to figure out that he had the extra 15 days under the law then. So, you know, if he had the luck to figure it out that that was the law, even if the courts had established the law were wrong, you know, as you play this game, he gets to have his case heard. Well, I think the United States Supreme Court has made explicitly clear that even if you were to assume that there's been these sort of changes in the law, that that is not an extraordinary circumstance warranting reopening. We can never get finality. We're going to go on for 10 years. If we stopped five years ago, you'd be right. It probably wouldn't have been an extraordinary circumstance. That was only the beginning. Then we get to the next problem where it's the same problem. The second time when they said you can't ever file a 60B motion because there's a change in the law. That's the next issue. And that turns out also to be incorrect. It depends on all the circumstances. So we have those two things that occurred. And we've got him fighting for 10 years. And he's discovered maybe, again, through brilliance, two erroneous rulings. I think we just respectfully disagree. They're not they weren't erroneous rulings. This Court's decision was not erroneous when it affirmed the district court's original denial of the petition as untimely. Well, maybe the district court read what he said, that there was no difference between the two. Well, okay, we're just about out of time. I'm not going to hold you to the time. I think I've articulated our position, and I would be willing to submit it on that. Thank you. Okay. Well, you did a very good job with the procedural arguments. And I think I can respond very quickly to that. I won't. I would never. What's your response to the argument that the law always really was and now is that whether it was a petition for review or in a habeas or in a direct, that the law always was that the 15 days doesn't apply? Actually, I believe, Your Honor, it's 30 days. And as it relates to this case, there are three defects in her argument, and each of them is fatal. First of all, that's not what the district court held in this case, despite what Ms. Haley said. Nor did this court decide the case based on that distinction. Quite to the opposite. The district court kept asking, is there a difference between a petition, the denial of a petition for review denying a habeas petition and the denial of a, quote, an original habeas petition? And it wasn't Ms. Haley, but it was her predecessor who said on, I think, four separate occasions, there is absolutely no difference between them. They are, quote, identical for all purposes. At the very end, she submitted a declaration saying, you know, I was wrong. There's some small technical distinctions that don't have anything to do with the issue now before the court. But in all other respects, the two types of petitions differ in name only. Now, the important thing about that is the State was arguing that in regard to this very issue. It wasn't on some other point. It was because at that time the State thought it was going to win this issue if it said that both of them were identical. The ---- But Ms. Haley says that it's true. Whichever it was, you didn't get the 30 days. Whichever it was, you didn't get the ---- well, that ship has sailed. Bunny v. Mitchell held to the contrary. That was adopted as the rule of this circuit by Allen v. Lewis. Ms. Haley's argument, quite frankly, is she thinks Bunny v. Mitchell was wrongly decided. Well, it's too late for that. The Court not only has reaffirmed it in several cases, but it went en banc and adopted the rule. Most important, the distinction that the State is now urging would be absolutely contrary to this Court's analysis in the case of Biggs v. in analyzing exactly this question, that if it is a denial of a petition for review from the denial of a habeas petition, the petitioner gets the extra 30 days. All of that is settled, and the State's difference with that may be understandable, and maybe the State was right in the first place. I don't think so, but it's really, literally a moot point at this time. You know, I think that that's all I have, Your Honors, unless the Court has further questions. No, thank you. Thank you both very much. It was really a helpful argument. Thank you, Your Honor. Very well presented. Thank you.
judges: Reinhardt, Tashima, Bright